Argued and submitted January 29, reversed and remanded with instructions
August 4, 1999

## LONE OAK RACING, INC.,
an Oregon corporation,
and Oregon Horsemen's Benevolent
& Protective Association,
an Oregon nonprofit corporation,
*Respondents,*

*v.*

## STATE OF OREGON,
acting by and through the
OREGON RACING COMMISSION,
*Appellant.*

(97C-10028; CA A97122)

986 P2d 596

John T. Bagg, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Timothy J. Sercombe, argued the cause for respondents. With him on the brief was Preston Gates & Ellis LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

Defendant Oregon Racing Commission appeals from a judgment that awarded plaintiffs summary judgment on their first claim for declaratory relief under ORS 28.010 and declared plaintiffs' rights under ORS 462.125(2).[1] ORCP 47. We remand for vacation of the judgment because we conclude that defendant had exclusive jurisdiction over the controversy that led to the declaratory judgment.

In January 1997, plaintiffs Lone Oak Racing, Inc. (Lone Oak) and the Oregon Horsemen's Benevolent & Protective Association (HBPA) filed a complaint in circuit court for a declaratory judgment. As we understand it, the filing of the complaint was prompted by a meeting with defendant that concerned plaintiffs' request that defendant repeal a rule regarding simulcasting privileges. Simulcasting privileges are important to the economic viability of a race meet.[2] Plaintiffs contended that the rule would "preclude simulcasting

---

[1] ORS 462.125(2), which was amended in 1993, provides, in pertinent part:

"Not more than 350 days of racing, exclusive of racing days authorized to designated licensees pursuant to subsections (4) and (5) of this section, shall be held in any metropolitan area in any fiscal year. Race days shall be allocated to race meets for horses (class A) and to race meets for greyhounds (class B) in a manner not inconsistent with allocations made by the commission for calendar years 1992 and 1993. However, not fewer than nine live races must occur on 40 percent of all days on which the commission authorizes pari-mutuel wagering for horse races, or on 80 days, whichever is greater. None of the days allocated in any metropolitan area to race meets for horses and to race meets for greyhounds shall overlap."

[2] According to the affidavit that Lone Oak's president made in support of plaintiffs' motion for summary judgment,

"[s]imulcasting involves the broadcasting of animal races at a betting facility located at a race track or at an off-track facility. The simulcast bets are tallied and pooled with the wagers at the sending track. Wagering upon simulcasts is essential to the continued financial viability of both of these race meets. It substantially increases the number of race offerings. Simulcasting also attracts bettors by offering them races from tracks such as Del Mar that feature nationally-recognized horses, trainers, jockeys, and owners."

The affidavit of defendant's executive director in support of defendant's motion for summary judgment states, in part:

"Simulcasting privileges are important in racing because serious aficionados of parimutuel gambling want to bet on the 'big races' at large tracks in other states and want to bet into the large betting pools created by the simulcast system. Each time a bet is placed by either simulcasting or live racing, the race meet 'tote' (computer system) computes the bet, assigns odds, and at the end of the race, tallies the winning amounts according to a pre-ordained formula. In addition to the amounts assigned to the wagering pool, another sum

by" Lone Oak and could make a race meet financially unsuccessful. As a result of the meeting, plaintiffs apparently came to believe that the commission intended to deny any application by Lone Oak for a license for the 1997 racing season based on an interpretation of ORS 462.125. In their complaint, plaintiffs alleged that Lone Oak "plan[ned] to apply for a license to conduct [its Salem] meet during the 1997 season." They sought to obtain a favorable declaration about the meaning of the statute from the circuit court, rather than proceeding through the administrative process with defendant.

In its answer to the complaint, defendant admitted the following facts: Lone Oak is an Oregon corporation that has conducted a "horse race meet at the Oregon State Fairgrounds each year for the past several years." Defendant licensed Lone Oak to conduct those meets under the statutory authority for commercial horse race meets. Defendant allocated fewer than 80 days for the Lone Oak meet each year from 1992 to 1996. HBPA is an Oregon nonprofit corporation that is "devoted to furthering the welfare of persons in the horse racing industry, including horse owners, trainers and grooms." Defendant "has recognized HBPA as representative of the horse racing industry in the State of Oregon. HBPA is an interested party in the criteria used by [defendant] to approve horse race meet licensees." Additionally, defendant's answer admitted the following excerpt from plaintiffs' complaint:

> "By letter of December 12, 1996 to [Lone Oak], Oregon Racing Commission Chair Stephen S. Walters stated that under ORS 462.125(2) a commercial meet licensee must 'run a minimum of 80 days of nine live races each.' At the December 19, 1996 meeting of the Oregon Racing Commission, Chair Walters stated that this interpretation of ORS 462.125(2) was one shared by him, the executive director of the Commission and its legal counsel. Chair Walters also stated that the effect of this interpretation would be that an application by [Lone Oak] for a commercial meet license for

is assessed and distributed or held for the costs of operations, purses, bonuses, State of Oregon share, and profits. The more races a licensee can offer for betting, the more money can be made, especially off of simulcasting which has a relatively low overhead. By statute, simulcasting privileges can be granted only to commercial race meet licensees."

the Salem facility for the period of time obtained in the past would be denied."

Plaintiffs sought to obtain a declaration from the circuit court that "ORS 462.125(2) does not require each commercial horse race meet to be conducted for a period of 80 or more race days[.]" Defendant's answer contained a counterclaim requesting that, in the event that the trial court did not dismiss plaintiffs' complaint, the trial court declare

"that an application for a commercial race meet license may be granted to race meets for horses in a manner not inconsistent with allocations made by the Commission for the calendar years 1992 and 1993 and only if not fewer than nine live races occur on 40 percent of all days on which the Commission authorizes pari-mutuel wagering for horse races, or on 80 days, whichever is greater, as required by ORS 462.125(2); and that such requirements must be met in each 'metropolitan area' within the meaning of ORS 462.125(3)."

Defendant moved for summary judgment. Plaintiffs did not file a reply to defendant's counterclaim but received leave from the trial court to file an amended complaint. The first claim of plaintiffs' amended complaint requested declaratory and injunctive relief concerning ORS 462.125, and the amended complaint contained two additional claims. Plaintiffs also filed a motion for summary judgment. Defendant did not file an amended answer in response to plaintiffs' amended complaint.

The trial court entertained defendant's and plaintiffs' motions for summary judgment. In a letter to the parties' attorneys, the trial court ruled that there were "no genuine issues of material fact in dispute" and that plaintiffs had stated a justiciable controversy and were justified in not filing a license application with defendant before they filed their claim for relief in circuit court. Eventually, the trial court entered a modified judgment that provided, in part:

"1.    Judgment is entered in favor of Plaintiffs on their first claim for relief. The court declares, as to commercial horse race meet licensees only, ORS 462.125(2) requires that all horse race meet licensees must not run fewer than nine live races on 40% of all days on which the Oregon Racing Commission authorizes pari-mutuel wagering for horse

races, or on 80 days, whichever is greater. An application for a commercial horse race meet with fewer than 80 days of live racing may be allowed by the Oregon Racing Commission if the total number of live race days in the state in each fiscal year is at least 40% of the total number of days allocated to pari-mutuel wagering (live plus simulcast days), if the applicant otherwise meets the requirements of law;

"2.  Declaratory judgment is denied as to Defendant's counterclaim as inconsistent with the court's ruling on Plaintiffs' first claim for relief, and is therefore dismissed;

"3.  Plaintiffs' second claim for relief is dismissed for lack of jurisdiction;

"4.  Plaintiffs' third claim for relief is dismissed for lack of jurisdiction[.]"

On appeal, defendant assigns error to the trial court's failure to dismiss plaintiffs' action on the ground that plaintiffs' exclusive remedy was under the Oregon Administrative Procedures Act (APA), ORS 183.310 *et seq*. Defendant argues that

"where the legislature sets out an administrative licensing process and a remedy for denial of a license, the administrative process should be followed and should not be subject to collateral attack through declaratory judgment or some other proceeding in circuit court. If a party is permitted to pursue both the administrative remedy and seek a declaration on a critical matter in another forum, there is a very real possibility of conflicting findings and confusion over which order or resolution should be given force and effect."[3]

Plaintiffs counter:

"There was no agency order to review, so as to bring into play the judicial review parts of the Administrative Procedures Act. Declaratory relief should not be refused because a statutory construction issue could be adjudicated in potential administrative processes, when relief under the administrative processes would not be timely, the issue involves no agency expertise, and the agency position is certain and would not resolve the controversy. At a minimum,

---

[3] Plaintiffs cross-appealed, but they subsequently abandoned the cross-appeal.

the declaratory relief here was proper under the Commission's counterclaim seeking a construction of ORS 462.125 from the court."

■     Initially, we discuss the claims for declaratory judgment as they pertain to plaintiff HBPA. In their brief, plaintiffs argue that a justiciable controversy exists between them and defendant for purposes of ORS chapter 28. Specifically, they contend:

> "HBPA had no administrative remedy to exhaust. Despite the Commission's references to both plaintiffs as 'Lone Oak,' the interests of HBPA are separate from those of Lone Oak. The parties agree that HBPA is the 'representative of the horse racing industry in the State of Oregon,' that the interpretation of ORS 462.125 advanced by the Commission's representatives 'will result in less purse money being awarded to Oregon horse breeders, trainers and owners' and that 'the viability of the horse racing industry in Oregon will be diminished.' Given this economic harm to its members, and the imminent loss of the Salem and Grants Pass meets by the threatened actions of the Commission, HBPA was entitled to seek immediate declaratory relief from a court."

They also assert that "HBPA had a * * * genuine and existing interest in that its members would lose substantial revenue given the new interpretation of ORS 462.125(2)." They also say that defendant

> "admitted that its interpretation of ORS 462.125 would diminish the viability of the horse racing industry in the state. The industry had a compelling economic interest of its own to advance and protect. There was no need for * * * Lone [Oak] to exhaust its licensing opportunities in order for HBPA to assert its declaratory judgment rights."

Finally, the affidavit of HBPA's Executive Secretary in support of plaintiffs' motion for summary judgment states, in part, that "[t]he purpose of this affidavit is to establish that the members of the HBPA will adversely be affected or aggrieved by the challenged actions and interpretations of the statutes."

■ In *Brown v. Oregon State Bar*, 293 Or 446, 449-50, 648 P2d 1289 (1982), the court explained that the "two jurisdictional requisites for entertaining an action for declaratory relief" are a justiciable controversy and subject matter jurisdiction over the controversy. Thereafter, in *AFSCME v. DAS*, 150 Or App 87, 94, 945 P2d 102 (1997), we reasoned that "a plaintiff's standing is germane to whether a justiciable controversy exists" in a claim under ORS chapter 28 and that we are required to raise that jurisdictional issue even though no party has done so. Here, HBPA's claimed interest is that the horse racing industry will suffer and its members will lose substantial revenues, given defendant's anticipated interpretation of ORS 462.125. However, in *Oregon Taxpayers United PAC v. Keisling*, 143 Or App 537, 544, 924 P2d 853, *rev den* 324 Or 488 (1996), *cert den* 520 US 1252 (1997), we held that "ORS 28.020 does not allow an organization to assert the rights of its members." Thus, HBPA lacks standing to represent its members, and there is no justiciable controversy involving HBPA that permits the circuit court to entertain HBPA's action for declaratory relief. Consequently, the trial court erred in granting declaratory relief to HBPA.

■ The remainder of our opinion focuses on the issues presented on appeal as they relate to plaintiff Lone Oak and particularly on the issue of whether defendant had exclusive jurisdiction over Lone Oak's claim. In deciding whether the trial court lacked jurisdiction, the Supreme Court's decisions in *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997), *Hay v. Dept. of Transportation*, 301 Or 129, 719 P2d 860 (1986), and *Alto v. State Fire Marshal*, 319 Or 382, 876 P2d 774 (1994), are instructive. In *Boise Cascade Corp.*, the plaintiff brought an inverse condemnation action against the State of Oregon arising out of the Board of Forestry's refusal to permit logging operations on the plaintiff's land. After the trial court dismissed the inverse condemnation claim on several grounds, including lack of subject matter jurisdiction, the plaintiff appealed to this court. We reversed. The state petitioned the Supreme Court for review and argued that

"(1) [t]he Board has 'exclusive' jurisdiction, to the exclusion of the circuit court, to decide the 'takings' issue; or, (2) alternatively, a regulatory 'takings' claim must be resolved, in

the first instance, by the agency whose rule is alleged to have effected a 'taking,' because the agency has 'primary jurisdiction' over such claims." *Boise Cascade Corp.*, 325 Or at 191.

The court explained the difference between primary and exlusive jurisdiction:

"The doctrine of 'primary' jurisdiction is defined as a doctrine under which, 'where the law vests in an administrative agency the power to decide a controversy or treat an issue, the courts will refrain from entertaining the case until the agency has fulfilled its statutory obligation.' *Black's Law Dictionary* 1190-91 (6th ed 1990). An even clearer and more comprehensive definition appears in a standard layman's dictionary: '[T]he right or responsibility of an administrative or regulatory agency to pass initially on controversies involving matters of fact or discretion within its sphere before relief is sought in the courts[.]' *Webster's Third New Int'l Dictionary* 1800 (unabridged ed 1993). 'Exclusive' jurisdiction is defined as jurisdiction 'to the exclusion of all other [tribunals].' *Black's*, at 564. 'Concurrent' jurisdiction means, in this case, that a court and administrative agency share '[a]uthority * * * to deal with the same subject matter.' *Id.* at 291." *Boise Cascade Corp.*, 325 Or at 191 n 8 (bracketed material in original; omission in original).

It concluded that the agency did not have exclusive jurisdiction and "that [the] plaintiff's complaint properly was before the circuit court, because the circuit court and the Board share *concurrent jurisdiction* in this case. It follows that the trial court erred in dismissing the action for lack of subject matter jurisdiction." *Id.* at 196 (emphasis added).

In *Hay*, the Oregon Department of Transportation (ODOT) had promulgated a rule that allowed public parking on the plaintiffs' beach property. After the rule went into effect, the plaintiffs filed a complaint in circuit court alleging that the use of their property for parking constituted a trespass and a nuisance, thereby reducing their property value because of the effect of the rule. The defendant agencies moved for summary judgment on the ground that the exclusive means for a challenge of the rule was through the administrative process under ORS 183.400(1). After the trial court

granted summary judgment, the plaintiffs appealed. On review, the Supreme Court rejected the defendant agencies' argument that the APA did not allow the circuit court to determine the rule's validity in the context of a civil action for trespass and nuisance. The court reasoned that ORS 183.400(1) was not exclusive on its face. It held:

"In this case, the circuit court could hear challenges to the rule's validity. Our decision does not mean that anyone who dislikes a rule may challenge that rule in circuit court; ORS 183.400(1) authorizes the Court of Appeals to hear such a challenge. Only when a party places a rule's validity at issue in a separate civil action may circuit courts determine a rule's validity. This is such a case." *Hay*, 301 Or at 138.

In *Alto,* the plaintiffs brought an action in circuit court for declaratory and injunctive relief under ORS chapter 28 against the State of Oregon. They alleged that certain rules of the State Fire Marshal violated statutory prohibitions. The challenged rules had not gone into effect. The defendants moved to dismiss the plaintiffs' complaint on the ground that the circuit court lacked subject matter jurisdiction over the claim because the complaint challenged an administrative rule. The circuit court concluded that it had jurisdiction and granted declaratory relief under ORS chapter 28, declaring the meaning of the statutes. It also enjoined enforcement of the rule. On review, the Supreme Court examined whether the plaintiffs' challenge could have been brought under ORS 183.400(1)[4] or under ORS 183.400(2).[5] It concluded that all of the plaintiffs' arguments that the Fire

---

[4] ORS 183.400(1) provides:

"The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court."

[5] ORS 183.400(2) provides:

"The validity of any applicable rule may also be determined by a court, upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law."

Marshal's rules violated various statutory provisions could have been examined under ORS 183.400(1). The remaining question was whether the plaintiffs were entitled to bring the action in circuit court under ORS chapter 28 because they sought an injunction, a remedy that is unavailable through the administrative process. The court concluded that injunctive relief was not necessary because, at the time the complaint was filed, the challenged administrative rules had not yet gone into effect and the court assumed that the state agency would follow the law as decided by this court under ORS 183.400. Consequently the court concluded that "the circuit court lacked subject matter jurisdiction to hear [the] plaintiffs' challenge to the validity of the Fire Marshal's rules under" ORS chapter 28 and that exclusive jurisdiction existed in the Court of Appeals under ORS 183.400(1). *Alto*, 319 Or at 395.

*Boise Cascade Corp.*, *Hay* and *Alto* provide the analytical template to be used in deciding this case. We must determine whether the agency had exclusive subject matter jurisdiction over Lone Oak's claim or whether the agency and the court had concurrent jurisdiction such that the primary jurisdiction doctrine could impact the choice of forum. *Cf. FOPPO v. County of Marion*, 93 Or App 93, 97, 760 P2d 1353 (1988), *rev den* 307 Or 326 (1989) (holding that a letter from the agency's legal counsel was not an order under ORS 183.310(5)(a) but, nonetheless, the circuit court did not have jurisdiction to entertain the plaintiff's claim for declaratory relief because the agency "is subject to the APA; therefore, the APA provides the exclusive methods for its actions and for review of those actions"). To make this determination, we look to the statutes that circumscribe defendant's authority and explore the nature of Lone Oak's claim.

ORS 462.270 provides, in part:

"(1)  The Oregon Racing Commission shall license, regulate and supervise all race meets held in this state and cause the various places where race meets are to be held to be visited and inspected at least once each fiscal year.

"(2)  The commission shall be the *sole judge of whether or not a race meet shall be licensed*. The application for a race meet license shall specify the duration of each race

meet, the number of race days the race meet shall continue and the number of races per day. The commission, in its sole discretion, is authorized either to accept or reject any application for a race meet license, and the decision of the commission is a final order which can be contested only on the basis that the commission abused its discretionary authority.

"(3)   The commission shall prepare and promulgate a complete set of rules to govern the race meets in every phase of operation consistent with the provisions of this chapter, public safety, health, welfare and any other matter pertaining to the good conduct of racing and shall make rules to govern public training tracks consistent with this chapter and with public health, safety, welfare, humane practices, and any other matter pertaining to the good conduct of racing. The commission shall also prepare and promulgate rules for the conduct of hearings held and shall establish the procedure to be followed in accordance with the Administrative Procedures Act then in effect." (Emphasis added.)

Under the language of ORS 462.270, defendant is the "sole judge" of whether a race meet shall be licensed. That language means that defendant has exclusive jurisdiction over the subject of the licensing of race meets. Apparently, the declaratory judgment action in this case was prompted by Lone Oak's belief that, if it applied for a license for the 1997 racing season, then defendant would deny the application based on the commission's interpretation of ORS 462.125(2). In that respect, this case differs from *Boise Cascade Corp.* and *Hay*, where the administrative process at the agency level had already been completed and the plaintiffs were subject to the effects of the completed process when they sought relief in circuit court. This case is more like the preemptive effort that occurred in *Alto*.[6] As in *Alto*, Lone Oak's concern about the meaning of the statute could have been raised and

---

[6] Lone Oak argues that this case is analogous to *Clark v. City of Albany*, 142 Or App 207, 921 P2d 406 (1996). However, Lone Oak's reliance is misplaced. Clark's claim for declaratory relief concerned the issue of whether the city could lawfully condition the approval of Clark's annexation application on his construction of a roadway. *Clark* is similar to *Boise Cascade Corp.* and *Hay* in that the process of making an application and the city's response was complete. In this case, Lone Oak did not make an application to defendant for a license. Moreover, the issues in *Clark* did not implicate the APA.

adjudicated under the APA, had it applied for a license. Had Lone Oak made an application, defendant's interpretation of ORS 462.125(2) would have affected its ultimate decision about whether to grant a license to Lone Oak for the 1997 season. That interpretation then would have been subject to our review under ORS 183.480 and ORS 183.482.[7] Thus, because Lone Oak's declaratory judgment action concerned licensing, a subject within the exclusive jurisdiction of defendant, we conclude that the circuit court did not have subject matter jurisdiction to entertain Lone Oak's complaint for a declaratory judgment.[8] The trial court erred in not dismissing plaintiffs' action for lack of jurisdiction.

Because of our holding that the circuit court lacks subject matter jurisdiction, we need not address Lone Oak's arguments or defendant's second assignment of error.

Reversed and remanded with instructions to vacate judgment and dismiss for lack of jurisdiction.

---

[7] ORS 183.480 provides, in part:

"(1) * * * any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form. A petition for rehearing or reconsideration need not be filed as a condition of judicial review unless specifically otherwise provided by statute or agency rule.

"(2) Judicial review of final orders of agencies shall be solely as provided by ORS 183.482, 183.484, 183.490 and 183.500.

"(3) No action or suit shall be maintained as to the validity of any agency order except a final order as provided in this section and ORS 183.482, 183.484, 183.490 and 183.500 or except upon showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted."

ORS 183.482 confers jurisdiction for judicial review of contested cases in this court.

[8] We do not decide what remedies HBPA would have had had it first raised the issue of the interpretation of ORS 462.125(2) to defendant, in light of the fact that it was not seeking a license.