Submitted on record and briefs November 5, 1999, vacated and remanded with instructions May 10, respondent's petition for reconsideration filed May 15 allowed by opinion June 28, 2000
See 168 Or App 556 (2000)

## Bhagwati P. PODDAR,
*Appellant,*

*v.*

## CLATSOP COUNTY,
*Respondent.*

## (97-2092; CA A103154)

2 P3d 929

Bhagwati P. Poddar, Ph.D., filed the briefs *pro se*.

Blair J. Henningsgaard filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals from a judgment that dismissed plaintiff's complaint after the trial court granted defendant county's motion for summary judgment, ORCP 47, and from a supplemental judgment that awarded defendant attorney fees. Plaintiff's complaint contains three claims for declaratory and injunctive relief in which he alleges that the Board of County Commissioners for Clatsop County violated certain county policies when appointing individuals to various boards and service districts. He makes four assignments of error: (1) the trial court erred in granting defendant's motion for summary judgment; (2) the trial court erred in denying plaintiff's motion for summary judgment; (3) the trial court judge erred by failing to recuse himself from hearing the motion for his own disqualification from the ORCP 68 proceeding following the entry of the judgment on the merits; and (4) the trial court erred in awarding attorney fees under ORS 20.105. Because we hold that there were no justiciable controversies before the trial court when it entered its judgment on the merits, we remand this matter to the trial court.

The issue of justiciability was originally raised by defendant to the trial court pursuant to an ORCP 21 A(8) motion that the trial court denied. Thereafter, the parties filed cross-motions for summary judgment. The trial court denied plaintiff's motion and granted defendant's motion. Although defendant does not cross-appeal and assign error to the trial court's ruling on its ORCP 21 A(8) motion, we must consider the issue of justiciability *sua sponte* because it affects the trial court's jurisdiction to enter the judgments. *Lone Oak Racing, Inc. v. Oregon Racing Commission*, 162 Or App 111, 118, 986 P2d 596 (1999); *Hudson v. Feder*, 115 Or App 1, 5 n 3, 836 P2d 779, *rev den* 314 Or 727 (1992).

In *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982), the Supreme Court described the elements of a justiciable controversy:

> "Justiciability is a vague standard but entails several definite considerations. A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. The

controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue. A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. The court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of constitutional authority, the court cannot render advisory opinions." (Citations omitted.)

Mootness is an aspect of justiciability. *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). The Supreme Court in *Barcik v. Kubiaczyk*, 321 Or 174, 182, 895 P2d 765 (1995), observed:

"Under Oregon law, a justiciable controversy exists when 'the interests of the parties to the action are adverse' and 'the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.' *Brumnett*[, 315 Or at 405-06]. 'Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties,' are moot. *Id.* at 406."

Plaintiff's first two claims rely, in part, on the provisions of *former* ORS 309.010 (1995), *repealed by* Or Laws 1997, ch 541, § 241(2), that required each county to appoint a Board of Ratio Review (BORR). The statute provided, in part:

"(1)   Except as provided in subsection (6) of this section, the county board of ratio review shall consist of five members:

"(a)   One member of the county governing body;

"(b)   One member of the governing body of a school district within the county;

"(c)   One member of the governing body of a taxing district within the county that is not a school district or the county; and

"(d)   Two nonoffice-holding residents of the county who are not employees of the county or of any taxing district within the county.

"(2)(a)   On or before June 15 preceding each tax year, and at other times upon the request of the county clerk at a regular meeting, or at a special meeting called by the chairperson, the county governing body shall appoint a pool of

board members who may be selected by the county clerk to sit on the board of ratio review. The members shall be appointed to the pools described in ORS 309.067. An appointment shall be in writing and shall designate which pool the member was appointed to.

"* * * * *

"(3) The term of each member of the board of ratio review shall begin on the July 1 next following appointment and shall end on the June 30 next following or when the member resigns or is replaced under subsection (5) of this section, whichever occurs first. The term of a replacement begins upon appointment and ends at the end of the term of the member replaced."

*Former* ORS 309.010 (1995) was repealed effective January 1, 1998. Or Laws 1997, ch 541, § 241(2).

■ According to plaintiff's complaint, the county also had in effect, at all material times, a written policy that limited the members of its boards, commissions and committees to two consecutive terms. In his first claim plaintiff alleges that "[f]or tax year 1997-98, commencing July 1, 1997, and ending on June 30, 199[8]," defendant appointed certain incumbents to the BORR in violation of its policy regarding consecutive terms. According to plaintiff, "[d]efendant * * * deprived plaintiff, the sole eligible non-incumbent applicant, equality of opportunity by reappointing the three ineligible incumbents to the BORR in violation of County Policy." Additionally, in his second claim for relief, plaintiff alleges that he had "before the BORR a petition (BORR#97-4) for a downward adjustment in the real market value of a building on his property for tax year 1996-97" and "is entitled to consideration of his petition by and a hearing before a BORR constituted in conformance with County Policy." With regard to his first claim, plaintiff asserts that he is entitled to: (1) a declaration that the Board violated the county policies by reappointing ineligible incumbents to the BORR for the 1997-98 tax year; (2) a declaration that the 1997-98 BORR was illegally constituted; (3) a declaration "that the decisions the BORR made while so illegally constituted are *ultra vires* and therefore null and void"; and (4) a permanent injunction enjoining the Board from violating county policies in future appointments. With regard to his second claim, plaintiff

seeks "injunctive relief enjoining the BORR for tax year 1997-98 [from] conducting any business until it is reconstituted in conformance with County Policy."

The trial court entered its judgment on the merits on July 14, 1998. Under *former* ORS 309.010 (1995), the appointees' terms to the BORR for the 1997-98 fiscal year would have ended on June 30, 1998. However, "[t]he board of ratio review in each county [was] abolished on December 31, 1997." Or Laws 1997, ch 541, § 223b(1). For those reasons, plaintiff's claims that the BORR was improperly constituted for the 1997-98 fiscal year under the county's policy of prohibiting members from serving more than two consecutive terms became moot. The BORR no longer existed at the time that the trial court entered the judgment against him on those claims.[1]

■ In his third claim for relief, plaintiff alleges

"18

"At all times material, the County had in effect County Policy No. 8.2.5: 'The Board will appoint a person to serve on only two boards or committees at any given time, excepting a person may serve additionally on CEDC.'

"19

"On April 23, 1997, the Board appointed the same person (Jim Hill) to four committees in violation of County Policy No. 8.2.5. Those committees were (1) 4-H and Extension Service District, (2) Clatsop County Road District #1, (3) Rural Law Enforcement Service District, and (4) Sunset Lake Service District. *Plaintiff is a resident of the first three of the named districts.*

"20

"On April 23, 1997, the Board appointed the same person (Dave Haskell) to three committees in violation of County Policy No. 8.2.5. Those committees were (1) Clatsop

---

[1] To the extent that plaintiff's first claim seeks a declaration that all of the 1997-98 BORR's decisions are nullities and an injunction against the Board to enjoin it from violating county policies in future appointments, he has not demonstrated that he has standing for reasons similar to those stated in our analysis concerning plaintiff's third claim for relief.

County Road District #1, (2) Rural Law Enforcement Service District, and (3) Sunset Lake Service District. *Plaintiff is a resident of the first two of the named districts.*

"21

"Plaintiff advised the Board on July 15, 1997, that the appointment of the same person at the same time to four county committees was in violation of County Policy No. 8.2.5 and that the Board should rescind the appointment of the same person to two of four committees. To date the Board has taken no action to conform to County Policy.

"22

"Plaintiff is entitled to declaratory judgment to the effect that the Board's action appointing the same persons at the same time to more than two committees was in violation of the County Policy No. 8.2.5, that the four committees specified in paragraphs 19 and 20 above were illegally constituted commencing with April 23, 1997, and that the decisions these committees made while illegally constituted are *ultra vires* and therefore null and void.

"23

"Plaintiff is further entitled to injunctive relief permanently enjoining the Board from violating County Policy No. 8.2.5 in future appointments to County committees, commissions, and boards." (Emphasis added.)

Standing is also an aspect of a justiciable controversy. *Brown*, 293 Or at 449-50; *Lone Oak Racing, Inc.,* 162 Or App at 118. In *Eckles v. State of Oregon*, 306 Or 380, 383-84, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032, 109 S Ct 1928, 104 L Ed 2d 400 (1989), the Oregon Supreme Court distinguished between two uses of the term "standing":

"Ordinarily, 'standing' means the right to obtain an adjudication. It is thus logically considered prior to consideration of the merits of a claim. To say that a plaintiff has 'no standing' is to say that the plaintiff has no right to have a tribunal decide a claim under the law defining the requested relief, regardless whether another plaintiff has any such right. When this court has used the term 'standing,' the term has for the most part been used in this sense. We will so use the term in this opinion.

"In contrast, 'standing' is also sometimes used to refer to the existence of a substantive personal right. Used in this sense, 'standing' is concerned with the merits of a claim. To say that a plaintiff has 'no standing' is to say that no right of the plaintiff was violated, regardless whether the conduct of a defendant was in general unlawful or unlawful as to some other person. This use of 'standing' should be avoided because it easily confuses the right to obtain an adjudication of a claim for relief with the right to obtain the relief itself.

"One other source of confusion is the habit of treating standing as if it were a generic concept unrelated to the specific legal relief requested by a party. This court has noted on more than one occasion that whether a person is entitled to seek judicial relief depends upon the type of relief sought and commonly is governed by a specific statutory standard. A person with standing to seek one type of relief will not necessarily have standing to seek any other type of relief. Because plaintiff sought declaratory and injunctive relief, we must decide the issue of his standing by looking to the specific statutes and cases governing his right to seek these types of relief." (Citations omitted; footnotes omitted.)

In light of plaintiff's allegation that he has standing for purposes of his third claim because he is a resident of the named service districts, the court's holding in *Gruber v. Lincoln Hospital District*, 285 Or 3, 588 P2d 1281 (1979), is instructive. In *Gruber*, the service district was a municipal corporation that was organized to provide facilities for sick and injured individuals. The district entered into a contract with a physician in which the district promised to provide space, equipment and support staff to the physician, and he agreed to provide services on behalf of the district. The contract also contained a compensation scheme by which the district billed and collected the charges for the physician's services and paid him a percentage of the billings. Through his action, the plaintiff sought to invalidate the contract on several grounds, including that the contract "violated a rule of professional ethics of the American Medical Association said to have been adopted by the district's staff and approved by the district's board of directors." *Gruber*, 285 Or at 6. He alleged that he had standing to bring the action because he was a resident and taxpayer of the service district. The court

rejected his argument that he had standing, holding that his allegations were insufficient. It said that

> "nothing further is said that bears on a person's rights, status, or other legal relations consequent upon residency within the territory of the district. We do not say that there may not be such consequences of residency that might support a person's standing to seek judicial review of some action of the district, but neither plaintiff's complaint nor his brief refers to them." *Id.* at 7.

Here, plaintiff alleges only that he is a resident of the district. Like the plaintiff in *Gruber*, plaintiff does not demonstrate that his interest in the controversy alleged in the third claim is more than any other resident, elector or taxpayer of the district. In his brief, plaintiff contends that the appointments at issue were to "the budget committees of four service districts, not to governing boards of those service districts." Even if that is the case, that fact does not assist plaintiff. He has demonstrated only an abstract interest in the correct application of the county's policies that he shares with every other member of the named districts. In our view, this case is controlled by the court's holding in *Gruber*. Because plaintiff has not demonstrated any "injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of a law," *Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 95, 597 P2d 1232 (1979), he had no standing for purposes of his third claim. Consequently, the claim fails to allege a justiciable controversy.

Because plaintiff's claims were not justiciable when the trial court entered the July 14 judgment, we must determine the appropriate disposition of that judgment. In *First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 208, 986 P2d 556 (1999), the Supreme Court noted that it had "been inconsistent in the manner in which it has disposed of a judgment on appeal after determining that a case has become moot." The court reasoned:

> "On reflection, we hold that the better practice when a case becomes moot on appeal or on review is to vacate both the decision of the Court of Appeals and the circuit court judgment. Reversal implies that a court incorrectly decided the case on the merits. Vacation of a decision, by contrast, suggests nothing about the propriety of the decision on the

merits, because it conveys the message that the decision on the merits ought not to have been rendered at all (if the controversy was moot when the case was decided) or ought not to have a prospective effect (if the controversy became moot after the case was decided).

"After determining that the case was moot, the Court of Appeals dismissed Nimbus's appeal. Although dismissal of an appeal does not necessarily result in an affirmance of the judgment being appealed, dismissal of an appeal unquestionably leaves the judgment in place. The judgment disposing of Nimbus's third-party claims against National was a disposition on the merits of those claims. Under familiar principles of claim preclusion, if the judgment were left in place, the judgment might preclude Nimbus from asserting its claims against National in a new action. As explained above, Nimbus's claims against National, pleaded as third-party claims, became moot on entry of the judgment disposing of the primary claims, thereby precluding appellate review of the propriety of the dismissal of the third-party claims on their merits. Therefore, rather than merely dismissing the appeal, the Court of Appeals also should have vacated the judgment disposing of the third-party claims and remanded with instructions to dismiss those claims as moot." *First Commerce of America*, 329 Or at 208-09 (citation omitted; footnote omitted).

Based on *First Commerce of America*, we are required to vacate the July 14 judgment and remand to the trial court to dismiss plaintiff's claims because they are not justiciable.

■  We now turn to plaintiff's assignments of error about the award of attorney fees that was made in the supplemental judgment pursuant to ORCP 68 C(5)(b).[2] Plaintiff's third assignment of error states: "The trial court judge, who was the subject of plaintiff's affidavit alleging actual prejudice, erred when he did not recuse himself from hearing the motion for his own disqualification in an ORCP 68 proceeding

---

[2] ORCP 68 C(5)(b) provides:

"When any issue regarding attorney fees or costs and disbursements has not been determined before a judgment pursuant to Rule 67 is entered, any award or denial of attorney fees or costs and disbursements shall be made by a separate supplemental judgment. The supplemental judgment shall be filed and entered and notice shall be given to the parties in the same manner as provided in Rule 70 B(1)."

after final judgment had been entered." Plaintiff's fourth assignment of error states: "The trial court abused its discretion in awarding attorney fees against plaintiff under ORS 20.105 when the party claiming attorney fees did not make an appropriate motion with factual support and legal criteria."[3]

■ A supplemental judgment for attorney fees can be entered pursuant to ORCP 68 C(5)(b) "[w]hen any issue regarding attorney fees or costs and disbursements has not been determined *before a judgment pursuant to Rule 67 is entered*[.]" The rule presupposes a judgment on the merits before a "supplemental judgment" is authorized. Under *First Commerce of America, Inc.*, the vacation of the July 14 judgment will mean that there is no underlying judgment on which the existing supplemental judgment is predicated. In the event that defendant seeks attorney fees on remand and the trial court decides to award attorney fees, necessarily, a new judgment would have to be entered. Furthermore, the facts that gave rise to plaintiff's third and fourth assignments may cease to exist on remand.[4] Consequently, we decline to review plaintiff's third and fourth assignments of error.

Judgment on the merits vacated and remanded with instructions to dismiss complaint; judgment on attorney fees vacated and remanded.

---

[3] ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court *shall* award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, *upon a finding by the court* that the party willfully disobeyed a court order or *that there was no objectively reasonable basis for asserting the claim*, defense or ground for appeal." (Emphasis added.)

That statutory language reflects the 1995 amendments that apply to this case because it was commenced after September 9, 1995. Or Laws 1995, ch 618, §§ 2 and 140. We note that, consistent with *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 96, 957 P2d 1200, *clarified on recons* 327 Or 185, 957 P2d 1200 (1998), a trial court must provide the relevant facts and legal criteria on which the attorney fee award is based.

[1] We note that the judge who ruled on the parties' summary judgment motions and awarded attorney fees was not the same judge who denied defendant's Rule 21 motions on the ground that plaintiff had stated a justiciable controversy.