On respondent's motion to dismiss filed August 17, petitioner's answer and opposition to respondent's motion to dismiss filed September 20, respondent's amended motion to dismiss filed December 19, 2001, and petitioner's answer and opposition to respondent's amended motion to dismiss filed January 17, motion to dismiss denied as moot; amended motion to dismiss denied August 14, 2002

## SCOTT A. LOVELACE,
### *Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
### *Respondent.*

### A109609

51 P3d 1269

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Judy C. Lucas, Assistant Attorney General, for motion.

Scott A. Lovelace, *pro se*, *contra*.

Before Brewer, Presiding Judge, and Wollheim and Kistler, Judges.

BREWER, P. J.

**BREWER, P. J.**

Pursuant to ORS 183.400(1), petitioner filed separate petitions for judicial review of Board of Parole and Post-Prison Supervision rules OAR 255-050-0005(2) and OAR 255-050-0013, which authorize the board to postpone a parole release date if an inmate refuses to undergo a psychiatric evaluation ordered pursuant to ORS 144.223. In this proceeding, petitioner challenges the validity of OAR 255-050-0013.[1] The board filed a motion to dismiss the petition, arguing that—as a matter of statutory standing—petitioner must be adversely affected or aggrieved by the rule in order to challenge it and that he can demonstrate neither status. The board also argued that the petition is not justiciable because the rule has no practical effect on petitioner. In an amended motion to dismiss, the board argued that the petition is not justiciable on the ground that petitioner lacks statutory standing and on additional grounds that do not require discussion. We deny the amended motion to dismiss.

Petitioner was sentenced to a 30-year indeterminate sentence as a dangerous offender under the pre-guidelines matrix system. Petitioner sought and obtained post-conviction relief from that sentence and was resentenced to a 10-year prison term on the underlying conviction. *Lovelace v. Zenon*, 159 Or App 158, 976 P2d 575 (1999), *rev den* 329 Or 589 (2000). To comply with the new sentencing judgment, on July 6, 2001, the board issued an order providing that "[t]he Board converts the parole consideration date to a projected release date of 4/25/2002 following 192 months and will schedule an exit interview hearing with two current psychological evaluations on November 14, 2001." In his response to the board's motion to dismiss, petitioner stated that he did not want to submit to the psychological evaluations but that he had to do so in order to have a chance at release. He submitted to psychological evaluations on August 10, 2001, and September 8, 2001. As a result of those evaluations, the board postponed petitioner's parole release date to April 25, 2004.

---

[1] We also decide petitioner's petition challenging OAR 255-050-0005(2), which raises the same arguments. *Lovelace v. Board of Parole*, (A109610), 183 Or App 376, 51 P3d 1274 (2002).

■  Under OAR 255-050-0013, the board may postpone an inmate's parole release date if the inmate refuses to undergo a board-ordered psychiatric or psychological evaluation. OAR 255-050-0013 provides:

"(1)  The Board may postpone a parole release date until a specified future date when an inmate has refused to participate in a psychiatric or psychological evaluation, which the [b]oard ordered pursuant to ORS 144.223, prior to the inmate's release on parole.

"(2)  When the Board rescinds a parole release date under this section, the Board shall conduct a hearing to postpone the inmate's release date.

"(3)  The Board may postpone the parole release date up to two days before the inmate's good time date."[2]

Petitioner challenges the rule under ORS 183.400(1), which provides that "[t]he validity of any rule may be determined upon a petition by *any person* to the Court of Appeals in the manner provided for review of orders in contested cases." (Emphasis added.) The board first argues that petitioner lacks standing under ORS 183.400 to challenge the rule. The board reasons that, although ORS 183.400(1) provides that "any person" may challenge the validity of an agency rule in this court, the statute circumscribes that apparently broad grant of standing by further providing that review shall take place "in the manner provided for review of orders in contested cases." ORS 183.482(2), which pertains to judicial review of orders in contested cases, requires the petitioner to specify whether he or she "was denied status as a party or is seeking review as a person adversely affected or aggrieved by the agency order[.]" According to the board, ORS 183.482(2) imposes a requirement that, as incorporated into ORS 183.400(1), limits standing to persons "adversely affected or aggrieved" by a rule.

---

[2] OAR 255-050-0005, the rule challenged in the companion proceeding, provides, in part:

"(2)  The Board may postpone an inmate's scheduled release date upon:

"* * * * *

"(c)  The refusal of an inmate to participate in a Board-ordered psychiatric or psychological evaluation pursuant to ORS 144.223[.]"

Both rules provide that they implement ORS 144.223.

The board's argument presents a question of statutory construction. The decisive issue is whether the legislature's direction to employ "the manner" provided for review of contested case orders imports a more stringent standing requirement for rule challenges than otherwise is imposed by the plain text of ORS 183.400(1). For several reasons, we conclude that the board's argument is refuted by the text and context of the relevant statutory provisions. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993).

First, "manner" ordinarily refers to procedural matters, rather than substantive or jurisdictional requirements. *See Webster's Third New Int'l Dictionary*, 1376 (unabridged ed 1993) ("manner" means "a mode of procedure or way of acting"). The term has been interpreted consistently with that meaning in a similar statutory context. In *Felkel v. Thompson*, 157 Or App 218, 970 P2d 657 (1998), we considered the ordinary meaning of the term "the manner of" found in ORS 138.650, governing appeals of post-conviction judgments. That statute provides:

> "Either the petitioner or the defendant may appeal to the Court of Appeals within 30 days after the entry of final judgment on a petition pursuant to ORS 138.510 to 138.680. *The manner of taking the appeal* and the scope of review by the Court of Appeals and the Supreme Court shall be the same as that provided by law for appeals in criminal actions[.]" (Emphasis added.)

We held that ORS 138.071(4), which provides that a notice of appeal in a criminal case must be filed within 30 days of the judgment unless the defendant can show that the failure to file a timely notice of appeal is not attributable to the defendant personally and the appeal presents a colorable claim of error, does not apply to post-conviction appeals. We concluded that ORS 138.650 distinguished between the time limit and manner—meaning processes—for perfecting an appeal. Because ORS 138.650 imposed a specific time limit for filing a notice of appeal and provided no mechanism for a delayed appeal, we concluded that the delayed appeal provision of ORS 138.071(4) was not part of the "manner of" taking the appeal. *Felkel*, 157 Or App at 221-22. Here, as in *Felkel*, it is logical to infer from the term's plain meaning that the

"manner" provided for judicial review of contested case orders refers to procedural, rather than substantive or jurisdictional, requirements.

Second, the plain meaning of ORS 183.482(2) demonstrates that it does not *impose* a standing requirement. Instead, it requires that the petition *state* the basis for the petitioner's standing to contest the order. The requirement that a petitioner must be adversely affected or aggrieved by an agency order in order to seek judicial review is found in a different statute, ORS 183.480(1), which provides, in part, that "any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order * * *." Reading the statutes together confirms that ORS 183.482 merely prescribes a *procedure* for verifying the existence of the standing that ORS 183.480 requires. The latter statute does not, either by its own terms or by incorporated reference, impose a standing requirement for rule challenges under ORS 183.400(1). Accordingly, it makes no sense to conclude that the "manner" of review provided in ORS 183.482(2) includes the affirmative imposition of a standing requirement. Instead, ORS 183.482(2) requires a recital of standing that has no application in rule challenges because no statute imposes a comparable standing requirement for such proceedings.

Third, our conclusion is consistent with this court's recent opinion questioning the applicability of various provisions of ORS 183.482 to judicial review under ORS 183.400. In *Northwestern Title Loans v. Division of Finance*, 180 Or App 1, 4, 18-22, 42 P3d 313 (2002),[3] the petitioner sought injunctive relief through a rule challenge under ORS 183.400(1). We considered whether, because ORS 183.482(3) authorizes injunctive relief in contested cases, the phrase "in the manner" provided for review of orders in contested cases also permitted injunctive relief in rule challenges under ORS 183.400(1). We concluded that ORS 183.400(1) did not incorporate the injunctive relief provision of ORS 183.482(3). *Id.*

---

[3] We withdrew our decision in *Northwestern Title Loans* by an unpublished order because, although the parties had not timely notified us, the case became moot before we decided it. We nonetheless refer to portions of the decision that remain persuasive to us.

at 3-4. In so concluding, we noted that a number of the provisions and requirements of ORS 183.482 simply make no sense in the context of a rule challenge. *Id.* at 4; *id.* at 18-19 (Brewer, P. J., concurring).

Finally, and most importantly, ORS 183.400(1) provides that *any person* may seek judicial review of the validity of an administrative rule. In contrast, ORS 183.480 provides that *only those persons who are adversely affected or aggrieved* by a contested case order may seek judicial review of the order. It would be necessary to conclude that "any person" means less than its plain meaning signifies were we to interpret the "manner" provided for contested case order review as superimposing the restrictive standing requirement that applies to judicial review of contested case orders. Such a conclusion lacks support in both the text and context of ORS 183.400(1) and ORS 183.482(2). *See State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995) (where legislature uses different terms in related statutes, the court infers that it intended different meanings). We therefore reject the board's statutory standing argument.

■     In its amended motion to dismiss, the board does not renew its constitutionally based argument that petitioner's challenge is not justiciable. However, we are obligated to consider *sua sponte* any defects of justiciability. *See, e.g., Poddar v. Clatsop County*, 167 Or App 162, 164, 2 P3d 929, *adhered to on recons* 168 Or App 556, 7 P3d 677, *rev den* 331 Or 193 (2000). Therefore, we turn to the issue of whether petitioner's claim is justiciable, which the board addressed in its original motion.

■     In that motion, the board argued that, despite the "any person" language in ORS 183.400(1), the petition is not justiciable because *the board's rule* does not have a practical effect on petitioner. We frame the issue somewhat differently. A claim is not justiciable if *a decision of this court* would have no practical effect on petitioner's rights. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993).

Despite the unlimited statutory grant of standing to "any person," this court previously has recognized the existence of a justiciability requirement in a proceeding brought under ORS 183.400(1). In *Merrick v. Board of Higher*

*Education*, 103 Or App 328, 334, 797 P2d 388 (1990), we held that a petition under ORS 183.400(1) concerning the validity of an agency rule was not "abstract" and, thus, was justiciable, because the petitioner was a state employee responsible for enforcing the rule and, at the same time, was bound by an apparently conflicting enactment that affected her employment and associations.

Arguably, our decision in *Merrick* addressed only the justiciability requirement that opposing parties be truly adverse. However, in *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev allowed* 334 Or 75 (2002), this court emphasized that the elements of justiciability are not limited to mootness, ripeness, and adversity; we reiterated that justiciability also includes a constitutional standing component. We concluded that, even though the legislature had adopted a more lenient statutory standing requirement, a petition seeking judicial review of an order of the Land Use Board of Appeals under ORS 197.850(1) was not justiciable because the petitioner had failed to demonstrate that the court's decision would have a practical effect on its rights. We reached that conclusion although the parties clearly were adverse, the case was ripe, and it was not moot.

Here, there is no doubt that the parties are adverse. However, in its original motion, the board argued that the rule would not have a practical effect on petitioner unless and until the board actually postpones his parole release date on the ground that he failed to submit to an ordered psychological evaluation, a possibility that the board dismisses as speculative. That argument implicated the ripeness component of the justiciability requirement. *See McIntire v. Forbes*, 322 Or 426, 434, 909 P2d 846 (1996) (holding that, for a claim to be ripe, "[t]he controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue"). Petitioner responded that a practical effect exists in either of two ways. First, he contended that the board's application of the rule in 2001 and his actions in response triggered an effect that he presently endures: the unlawful postponement of his parole release date to April 2004. Second, he asserted that the rule's existence has a "coercive and chilling effect" on him.

■    We begin and end our analysis with petitioner's first claimed practical effect. That effect, if otherwise sufficient to establish justiciability, does not present a ripeness problem, because it focuses on the board's 2001 release decision. The question remains, though, whether this court's decision would have a practical effect on petitioner's rights so as to satisfy the standing component of the justiciability requirement. Petitioner's argument ultimately concerns the right to compel the board to reconsider its 2001 release decision under correct legal principles, without regard to an administrative rule that he claims is invalid. If successful in this proceeding, petitioner would receive a judgment declaring that the rule is facially invalid. With that judgment in hand, petitioner could bring an action seeking habeas corpus relief from the board's previous postponement of his release date based on psychological evaluations that were compelled under the rule. A judgment in that action, if petitioner were successful, necessarily would require the board to reconsider its previous release decision under correct legal principles. *See Meadows v. Schiedler*, 143 Or App 213, 219-22, 924 P2d 314 (1996) (holding, in habeas corpus case, that, on remand, board must reconsider its order postponing the plaintiff's parole release under the correct legal standard).

Although petitioner would not in this action be entitled to a judgment compelling the board to reconsider its previous release decision without regard to psychological evaluations compelled under the challenged rule, that conclusion does not mean that a judgment declaring the rule invalid would not have a practical effect on that asserted right. A contrast between the circumstances here and those present in *Brumnett* helps demonstrate the point. In *Brumnett*, the state moved to dismiss as moot the petitioner's petition for judicial review of a decision by the Psychiatric Security Review Board (PSRB) denying him release from confinement at the Oregon State Mental Hospital on the ground that the PSRB had unconditionally released the petitioner while review was pending in the Supreme Court. *Brumnett*, 315 Or at 404. The petitioner responded that his claim was not moot because he was still subject to a statutory obligation to pay all or part of the costs of his care incurred during the allegedly unlawful period of confinement. However, the state had "not

yet assessed, attempted to assess, or started any proceeding to assess any amount against [the] petitioner." *Id.* at 406. The court observed that "[t]he state has not said that it intends to seek any reimbursement from petitioner. Rather, one representative of the state has asserted only that it might do so at some time in the future." *Id.* at 407. Because that contingency was speculative, the court's decision would not have had a practical effect on the petitioner's rights. Thus, in light of his intervening discharge, the court concluded that the case was moot.

Here, as in *Brumnett*, the issue of whether a decision by this court would have a practical effect on petitioner's rights hinges on the likelihood that further legal action would be taken if petitioner prevailed. However, in contrast to the state's uncertain intentions in *Brumnett*, petitioner has demonstrated his determination to challenge the board's previous decision postponing his parole release date. Petitioner's selection of a circuitous route toward that objective does not undermine the probability that, if successful, he would take additional legal measures directed toward vindication of his asserted right. Under the circumstances present here, we conclude that a decision in this proceeding would have a practical effect on petitioner's right, if any, to compel the board to reconsider its previous release decision without regard to psychological evaluations ordered under the challenged rule.

Motion to dismiss denied as moot; amended motion to dismiss denied.