Argued and submitted August 8, petition for judicial review dismissed
October 29, 2003

## Scott Thomas KELLAS,
*Petitioner,*

*v.*

## DEPARTMENT OF CORRECTIONS
and Criminal Justice Commission,
*Respondents.*

A118362

78 P3d 1250

Donald Scott Upham argued the cause and filed the brief for petitioner.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

Petitioner, the father of an inmate, challenges two administrative rules pursuant to ORS 183.400. The rules in question—one adopted by the Criminal Justice Commission (CJC) and the other adopted by the Department of Corrections (DOC)—address the crediting of time spent in pretrial "house arrest" against prison sentences. *See* OAR 213-005-0012(2)(d) (CJC rule); OAR 291-100-0080(7) (DOC rule). Specifically, petitioner asserts that the CJC rule is impermissibly narrow in light of ORS 137.370(2)(a) and "contravenes principles of equal protection." As to the DOC rule, petitioner contends that DOC exceeded its authority in promulgating it. As we explain below, we do not reach petitioner's substantive arguments because we conclude that he lacks standing to challenge the rules at issue. Accordingly, we dismiss the petition for judicial review.

Petitioner's adult son Brian (son) was arrested when he was 19 years old for, among other things, burglary and robbery. After son had been charged, but before trial, the circuit court approved a "security release agreement" that placed son on "house arrest" during the pendency of the case. Under the agreement's terms, son could leave his parents' home unaccompanied only to go to work, attend classes at a community college, or visit his health club. He was allowed to leave the house at any time when accompanied by one of his parents. He remained on "house arrest" for 311 days.

Son was convicted of burglary and robbery and sentenced to prison for 36 months for each offense, with 12 months of the burglary sentence to run concurrently with the robbery sentence and the remainder to be served consecutively. He was committed to DOC custody and, within the year after son began serving his prison sentence, DOC calculated his prison term, setting a release date in April 2005. DOC did not give son credit against his prison term for the time that son spent in pretrial "house arrest."

■ ■ Petitioner then brought his challenge under ORS 183.400. That statute provides, *inter alia*, that "[t]he validity of any rule may be determined upon a petition *by any person* to the Court of Appeals[.]" ORS 183.400(1) (emphasis added).

With that broad language, the statute appears to confer standing without regard to whether a petitioner has a personal stake in the validity of a particular administrative rule. To meet constitutional justiciability requirements, however, more is required. Specifically, a petitioner seeking to challenge a rule under ORS 183.400 must demonstrate that he or she has a legally recognized interest at stake and that the relief sought—validation or invalidation of an administrative rule—would have a practical effect on that interest. *Lovelace v. Board of Parole (A109609)*, 183 Or App 283, 289-90, 51 P3d 1269 (2002); *Utsey v. Coos County*, 176 Or App 524, 539-40, 32 P3d 933 (2001), *rev dismissed as moot*, 335 Or 217 (2003); *see also Powell v. Bunn,* 185 Or App 334, 346, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003).

Petitioner implicitly acknowledges that he must demonstrate such an interest and effect. In his brief, petitioner states that he "is a 'person' with standing within the meaning of ORS 183.400(1), because the challenged rules unlawfully infringe upon his fundamental liberty interest to associate with his now incarcerated son." In addition, petitioner has submitted an affidavit in support of his petition for review that contains, among other things, information about his relationship with son:

"14. Our nuclear family is a close one, and this closeness, has been so for all of our time together since [son's] birth October 19, 1980. My son has been diagnosed by multiple mental health professionals as suffering from Bipolar Disorder and Attention Deficit, Hyperactivity Disorder, which has required, and continues to require, medication and structure to manage his illnesses. * * * My son's need for this care will continue for the rest of his life. Our family has always shared a deep affection for each other, and his mother and I do miss him dearly, as he does us. Once my son is released from prison, he will live with us and benefit from our nurture and structure for the years to come.

"15. [The prison in which son is housed] is approximately four hundred miles from my home, and because of the distance involved and my wife's work schedule, we are only able to visit with our son approximately every six weeks; whereas, before his confinement we were together every day for my son's entire life with the exception of a few months when my son was away at college."

Thus, petitioner brings this rule challenge based on the rules' impact on his *own* interest in associating with his adult son, not on son's behalf.

■ The state took no position on petitioner's standing but, because it is a jurisdictional matter, we are obligated to examine it *sua sponte. See Lovelace*, 183 Or App at 289. Thus, we consider whether petitioner has a legally protected interest in associating with son and, if so, whether invalidation of the rules in question would have a practical effect on that interest.

For the proposition that he has a fundamental liberty interest in associating with his son, petitioner cites several cases, all of which deal with the relationship between parents and their *minor* children. Petitioner cites no cases addressing the nature of the relationship between parents and their adult children. We have found no Oregon cases on that subject, but several federal circuit courts, in the context of actions for damages under 42 USC section 1983, have addressed whether a parent has a constitutionally protected right to associate with an adult child, with varied results. *See, e.g., Butera v. District of Columbia*, 235 F3d 637, 654 (DC Cir 2001) ("The Supreme Court has not spoken to the precise issue [of whether a parent has a constitutional right to the companionship of an adult child], and the precedent in this and nearly all of the other circuits suggests that no such right [exists]."); *Strandberg v. City of Helena*, 791 F2d 744, 748 (9th Cir 1986) (recognizing parents' "due process rights in the companionship and society" of their adult children); *Bell v. City of Milwaukee*, 746 F2d 1205, 1245 (7th Cir 1984) (recognizing a father's constitutional interest in the companionship of his adult son, at least under circumstances of that case— *i.e.*, son was single, had no children or family unit other than his father's, but lived apart from his father).

To establish standing under Oregon law, however, petitioner's interest need not rise to the level of a constitutionally protected right—instead, his interest need only be a legally recognized one. *See Powell*, 185 Or App at 346 ("If the court's decision will not have a practical effect on the plaintiff because the plaintiff cannot demonstrate an injury or other

impact on a legally recognized interest, the case will be dismissed based on the plaintiff's lack of standing."). The legislature has implicitly recognized the special status of parents in relation to their adult children in at least two contexts. The first is in ORS 109.010, which establishes a reciprocal duty of support between parents and children.[1] The second is the wrongful death statute, ORS 30.020, which allows a decedent's personal representative to recover damages for a parent's loss of the society, companionship, and services of a person killed as the result of the wrongful act or omission of another, without regard to the age of the decedent. ORS 30.020(2)(d).

Thus, there is some support for petitioner's contention that he has a legally recognized interest in associating with his adult son. But we need not determine whether that interest rises to the level necessary for standing because, even assuming such an interest exists, petitioner has not established that invalidation of the rules in question would have a practical effect on that interest.

To establish the impact that invalidation of the rules would have on him, petitioner relies on his statements in the affidavit quoted above—specifically, that "[o]nce my son is released from prison, he will live with us and benefit from our nurture and structure for the years to come" and that the distance between petitioner's home and the prison where son is housed prevents petitioner from seeing son as often as petitioner would like. Therefore, the argument goes, if the rules are invalidated, the CJC and DOC would be required to adopt rules crediting the 311 days that son spent on "house arrest" against his sentence, which would lead to son leaving prison 311 days earlier than under existing rules, thereby enabling petitioner to associate freely with son 311 days sooner than he would under the current rules.

■ ■ This court lacks jurisdiction to decide contingent cases. *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194

---

[1] ORS 109.010 provides:

"Parents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances."

(1993) ("appellate courts may not decide abstract, hypothetical or contingent questions") (internal quotation marks omitted). And the effect that petitioner asserts presents an obvious contingency—even if we were to invalidate the rules in question, petitioner's ability to exercise his right to associate with his son is contingent on his son deciding to maintain a relationship with him. The missing link in this case, then, is our inability to predict whether son will wish to associate with petitioner after his release from prison—either on his current release date or a date 311 days earlier.[2] If son chooses not to associate with petitioner on release, petitioner would have no more contact (and possibly less) with his son than he does presently. Thus, the relief that petitioner seeks—which for present purposes we presume would result in son's release from prison 311 days earlier than his current release date—would have no practical effect on his asserted interest in associating with son, because the asserted effect is speculative and contingent.

In sum, petitioner has not established that invalidation of the CJC and DOC rules will have a practical effect on his asserted interest in associating with son, and thus he lacks standing to challenge those rules.

Petition for judicial review dismissed.

---

[2] Notably, son has not joined in this rule challenge. We express no opinion as to whether petitioner could establish standing, under circumstances where son declines to join in the challenge, by coupling petitioner's own representations with an affidavit from son expressing a future willingness and desire to associate with petitioner.