No. 23 January 22, 2026 561

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Judy JOHNSON,
et al.,
*Petitioners,*

*v.*

PORTLAND ASSOCIATION OF TEACHERS
and Oregon Education Association,
*Respondents.*

Employment Relations Board
UP01724;
A185978

Argued and submitted October 31, 2025.

Daniel R. Suhr, Wisconsin, argued the cause for petitioners. Also on the briefs was Jeff Eager, EagerLaw PC and Hughes & Suhr LLC.

Andrew Toney-Noland argued the cause for respondents. Also on the brief were Noah T. Barish and McKanna Bishop Joffe, LLP.

Athul K. Acharya, Public Accountability, filed the brief *amicus curiae* for Labor Law Scholars. Also on the brief was Jim Davy, All Rise Trial & Appellate.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Petitioners are seven parents of students in the Portland Public School district (PPS), as well as a putative class of all PPS students and families. In November 2023, the Portland Association of Teachers (PAT), the exclusive representative of a bargaining unit of teachers, coaches, and other PPS employees, went on strike for nearly a month. After the strike concluded, petitioners filed an unfair labor practice (ULP) complaint pursuant to ORS 243.672, alleging that PAT engaged in an unlawful strike and that petitioners were therefore entitled to compensatory damages and civil penalties based on students' learning loss and the costs incurred by parents to provide childcare during the strike. The Employment Relations Board (ERB) dismissed petitioners' complaint for failure to allege an issue of fact or law that required a hearing, ORS 243.676(1)(b). Petitioners now seek judicial review of that order, arguing, among other things, that ERB erred by dismissing their complaint on the basis that petitioners lacked standing to challenge the legality of the strike.

We conclude that petitioners are not "injured parties" under ORS 243.672, and thus lack standing to pursue their claim. Although petitioners brought their claim as a ULP, in substance, petitioners seek a determination that the November 2023 strike was unlawful under ORS 243.726. However, under that statute, the ability to challenge the lawfulness of a strike is vested solely in the public employer, and the statute does not otherwise create a mechanism by which third parties or members of the public at large may challenge a strike of public employees. Because petitioners lack standing, we affirm ERB's order of dismissal.

We review ERB's order for substantial evidence, substantial reason, and errors of law. ORS 183.482(8); *see also Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 627, 16 P3d 1189 (2000) (applying that standard). In this case, because ERB dismissed petitioners' complaint without a hearing, the factual findings in ERB's order are based on the allegations in the complaint and on "the undisputed facts discovered during" ERB's investigation. Petitioners explicitly do not dispute any of ERB's findings.

Thus, in conducting our review, "we review ERB's reasoning for whether ERB correctly interpreted and applied legal principles in the individual case before it, and whether it did so consistently with other similar cases rather than arbitrarily or *ad hoc*." *Portland Assn. Teachers*, 171 Or App at 627.

We provide a robust factual background of the events to provide sufficient context for our decision. In June 2023, after PAT and PPS had bargained for a new contract for more than 150 days, PAT sought assistance from a mediator. When mediation sessions did not result in a contract, PAT declared an impasse pursuant to ORS 243.712. In September 2023, PAT submitted its final proposed contract language. PPS identified multiple items in PAT's offer that PPS believed to be permissive subjects of bargaining. PPS stated that it would file a ULP complaint with ERB if PAT did not submit a revised final offer. In response, PAT agreed that it would not include those items in future proposals over which PAT conditioned agreement, although it disagreed with PPS's characterization of various proposals as permissive subjects of bargaining.

In October 2023, PAT issued a notice of intent to strike and identified seven areas over which it and PPS had not reached agreement, and which formed the basis of the strike: (1) direct and indirect monetary benefits, including salary, retirement, and payroll contributions for paid family and medical leave insurance; (2) work year issues, including the length of the work year and the quantity of instruction, planning, and grading days; (3) the amount of individual planning time; (4) employee workload; (5) facilities and safety; (6) class size and caseload limits for Title I schools; and (7) issues related to leave. The strike began on November 1, 2023, and ended on November 26, 2023, after PAT and PPS reached a tentative agreement. As part of that agreement, PAT and PPS agreed to withdraw, with prejudice, the pending ULP complaints that each had filed against the other with ERB.

As a result of the strike, PPS students missed a number of schooldays, and parents took paid and unpaid time off work and incurred other childcare expenses.

In April 2024, petitioners filed a ULP complaint against respondents, PAT and the Oregon Education Association, alleging that PAT violated ORS 243.672(2)(c). That statute provides that a labor organization commits a ULP by refusing or failing to comply with any provision of ORS 243.650 to ORS 243.809. Specifically, petitioners alleged that PAT engaged in an unlawful strike in violation of ORS 243.726(2) and (4)(a) because its demands included what petitioners asserted were non-mandatory subjects of bargaining, such as class size in non-Title I schools. Petitioners sought compensatory damages and civil penalties, as well as an order voiding the collective bargaining agreement reached by PPS and PAT.

Before PAT filed a response, an administrative law judge (ALJ) issued an order to show cause why the complaint should not be dismissed without a hearing on the basis that neither the Public Employee Collective Bargaining Act (PECBA) nor ERB rules allowed petitioners to proceed anonymously or on a class action basis, and because petitioners lacked standing to pursue their claim. Petitioners responded that they should be allowed to proceed pseudonymously for privacy purposes and that class certification was appropriate because ERB has broad authority to order a remedy appropriate under the circumstances of each particular case. As to the issue of standing, petitioners argued that they were "injured parties," as that term is broadly defined, and that PECBA, through the ULP process, permits third parties to challenge the legality of a strike of public employees.

The ALJ submitted the matter to ERB and recommended it dismiss petitioners' complaint. ERB agreed. On the issue of standing, ERB reasoned that allowing petitioners file a ULP under ORS 243.672 would constitute an "end run" around state law because ORS 243.726 does not permit third parties or the general public to challenge strikes of public employees. ERB determined that:

"Under neither ORS 243.726(3) nor ORS 243.726(4) is a member of the public affected by a strike authorized to bring an action regarding a strike by public employees. Rather, under both statutes, the ability to contest the

legality of the strike (via a petition to [ERB] to declare the strike unlawful) or to assert that the strike creates such a danger or threat that binding interest arbitration should be used to resolve the dispute (via a petition to the appropriate circuit court) is vested solely with the at-issue public employer. Moreover, [under ORS 243.726(6)], in a petition to the circuit court, the court may not issue relief when the asserted loss is 'an economic or financial inconvenience to the public *** that is normally incident to a strike by public employees' which is the type of loss that [petitioners] are seeking to recover in this unfair labor practice complaint. ***

"In its response to the ALJ's order to show cause, [petitioners] do not dispute that they lack standing to challenge a strike under ORS 243.726(3) or (4). [Petitioners] argue, however, that they may pursue a separate unfair labor practice complaint under ORS 243.672(2)(c), even though the substance of that claim requires a conclusion that the November 2023 strike was unlawful. We reject the argument that the legislature created a path for members of the general public to litigate the lawfulness of a strike by doing an end run around ORS 243.726 via ORS 243.672(2) (c). Likewise, although ORS 243.672(2)(c) is a vehicle for a public employer to allege an unfair labor practice, the commission of such an unfair labor practice by a labor organization is distinct from the lawfulness of a strike ***."

(First ellipsis in original; second and third ellipses added.) ERB thus dismissed the complaint on the basis that petitioners lacked standing, and because petitioners could not proceed pseudonymously nor on a class basis. Further, ERB concluded that petitioners' claim failed on the merits because petitioners' complaint did not allege any factual basis on which to conclude that the bargaining process "suffered any ill effects from the alleged inclusion of a permissive subject in [PAT's] final offer."

On judicial review, petitioners challenge each basis for dismissal. However, we begin and end our analysis with the issue of standing. "Standing" is a legal term that identifies whether a party to a legal proceeding possesses a "status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). To

determine whether a party has standing, we must consider whether the complaining party "claims an injury for which the legislature contemplated redress" under the governing statute. *Jefferson County v. OPEU*, 174 Or App 12, 21, 23 P3d 401 (2001); s*ee also Kellas*, 341 Or at 477 ("The source of law that determines [whether a party has standing to invoke judicial review] is the statute that confers standing in the particular proceeding that the party has initiated, because standing is not a matter of common law but is, instead, conferred by the legislature." (Internal quotation marks omitted.)). We thus begin by examining the statutory framework under which petitioners filed their claim, specifically, ORS 243.672 and ORS 243.726.

ORS 243.672 prohibits public employers and labor organizations from engaging in specified conduct designated as an "unfair labor practice" or ULP. Among other things, a public employer or labor organization commits a ULP by refusing or failing to comply with any provision of ORS 243.650 to ORS 243.809. Here, petitioners allege that PAT committed a ULP by violating ORS 243.726. In general terms, ORS 243.726 provides that public employees who are not otherwise prohibited from striking may strike over "mandatory subjects" of bargaining, provided that a number of preconditions are met. Subsection (4) of ORS 243.726 provides that a labor organization "may not declare or authorize a strike of public employees" that violates any provision of ORS 243.726.

Under ORS 243.726, a public employer may challenge a strike of public employees by either petitioning ERB for a declaration that the strike is unlawful on the basis that the labor organization violated a provision of ORS 243.726, or by petitioning the circuit court to enjoin the strike if the strike creates "a clear and present danger or threat to the health, safety or welfare of the public[.]" ORS 243.726(3) - (4). Importantly, by the terms of the statute, the ability to challenge the lawfulness of a strike is vested solely in the public employer, and the statute does not otherwise create a mechanism by which third parties or members of the public at large may challenge a strike of public employees.

Nevertheless, petitioners contend that the legislature intended that third parties could assert violations of ORS 243.726 through the ULP complaint process. In their view, any party that is injured by a labor organization's violation of PECBA may file a ULP complaint with ERB. PAT responds that petitioners do not allege an injury that is cognizable under PECBA "because they have no rights or duties" under the specific provisions of PECBA at issue. Rather, the inclusion of permissive subjects of bargaining in a final offer may constitute a ULP on the basis that it violates the duty to bargain in good faith. That duty, PAT argues, imposes a "bilateral obligation between only the employer and union." For the reasons that follow, we agree with PAT's argument.

Under ORS 243.672(6), an "injured party may file a written complaint" with ERB alleging an unfair labor practice. "[T]he word 'injured' in ORS 243.672 refers to the common understanding of what constitutes an 'injured' litigant in other controversies." *Jefferson County*, 174 Or App at 21. That is, "the statute does not expressly define who has standing under it to bring a claim beyond the requirement that the complainant be an 'injured party' who has suffered a substantial injury." *Id.* at 22. Thus, on its face, the statute "does not limit ERB's authority over unfair labor practices to complaints brought by employers and employees." *Ahern v. OPEU*, 329 Or 428, 434, 988 P2d 364 (1999).

Although *Ahern* and *Jefferson County* describe an "injury" giving rise to standing under the ULP statute in broad terms, those cases do not stand for the sweeping proposition that any third party that is negatively affected by a strike of public employees has standing to challenge the legality of that strike. Rather, in *Ahern*, the court concluded that ERB had exclusive jurisdiction to adjudicate whether a union had committed a ULP by picketing a county commissioner's personal business during contract negotiations with Jefferson County. 329 Or at 431. The plaintiff, a county commissioner, argued that because the ULP constituted an element of his tort claim for intentional interference with economic relations against the union, the trial court had jurisdiction to determine whether the union had committed a ULP in the first instance. *Id.* at 432-33. The Supreme

Court disagreed, explaining that "[d]espite its tort label, the gravamen of [the] plaintiff's complaint is that [the union] has committed" a ULP, and in determining whether the trial court has jurisdiction over a matter, "a court must consider the nature of the matter, not the label that a party has placed on it." *Id.* at 436. In that context, the Supreme Court noted that, "[t]o achieve the goals of PECBA, ORS 243.672[(6)] provides that an 'injured party'—that is, *anyone* who has been injured by [a ULP]—may file a complaint with ERB," and thus, "the legislature intended ERB to have exclusive jurisdiction to determine whether [a ULP] has been committed." *Id.* at 434-35.[1]

As part of that same labor dispute, in *Jefferson County*, the county filed a ULP complaint with ERB in response to the union's picketing of county commissioners' personal businesses. 174 Or App at 14. ERB concluded that the county lacked standing to pursue that claim on the basis that the secondary picketing statute confers standing only on the public official whose business is picketed. *Id.* at 15. On judicial review, the county argued that it was an "injured party" under the secondary picketing statute because the union's actions could interfere with the operation of the county's business and its ability to attract qualified people to serve as its commissioners. *Id.* at 17, 20. After reviewing the text and context of the secondary picketing statute, we concluded that "the harm that the legislature was concerned about when it prohibited secondary picketing under the statute includes any harm caused to the primary employer." *Id.* at 25. We therefore concluded that the county had standing to pursue the ULP claim. *Id.*

Thus, under *Ahern* and *Jefferson County*, to establish standing, petitioners must demonstrate that they have suffered a substantial injury for which the legislature contemplated redress. We agree with ERB that petitioners have not

---

[1] Although the Supreme Court in *Ahren* used broad language to describe standing to bring a ULP complaint, we note that, under ORS 243.672(4), a labor organization may not picket "at the residence or business of any individual who is a member of the governing body of a public employer" if the objective "is to induce another person to cease doing business with the governing body member's business." Thus, in *Ahern*, the statute expressly conferred standing onto the plaintiff, a county commissioner, to seek redress through the ULP process for his alleged injury, economic harm resulting from the picketing of his business.

done so here. Although petitioners have labeled their claim as an "unfair labor practice," in substance, petitioners seek a determination that the November 2023 strike was unlawful under ORS 243.726. However, as we have explained, only a public employer may seek such a determination, either by petitioning ERB or the circuit courts. Moreover, petitioners do not cite any legal authority or legislative source to support their contention that the legislature intended the ULP process to redress harms to third parties caused by a strike of public employees.

In fact, other provisions of ORS 243.726 suggest the opposite. Subsection (6) provides that "economic or financial inconvenience to the public or to the public employer that is normally incident to a strike by public employees" does not constitute a "danger or threat to the health, safety or welfare of the public" sufficient to permit a circuit court to grant injunctive relief. Certainly, there is no dispute that PPS students and their parents were significantly impacted by the strike. However, the injuries petitioners allege, specifically learning loss and childcare expenses, are incidental to a strike by public school teachers, and the legislature specifically provided that such harms are not a basis on which to enjoin a strike. The statute does not otherwise suggest that such harms could separately provide standing to allege a ULP.

Moreover, we agree with ERB that the commission of a ULP by a labor organization is distinct from the lawfulness of a strike. In the context of a ULP complaint, the alleged inclusion of non-mandatory subjects of bargaining in a final offer

violates the duty to bargain in good faith. *See* ORS 243.672(1) (e), (2)(b) (providing that a labor organization or public employer commits a ULP by "refus[ing] to bargain collectively in good faith with" the other); *see also Assoc. of Oregon Corrections Employees v. DOC*, 213 Or App 648, 662, 164 P3d 291, *rev den*, 343 Or 363 (2007) (explaining that labor organizations and public employers "must bargain, in good faith, concerning mandatory subjects subject of bargaining" and that "one party cannot force another party to bargain concerning a permissive subject"). That duty is owed mutually

by the public employer to the labor organization and vice versa. *See* ORS 243.650(4) (defining "collective bargaining" as "the performance of the mutual obligation of a public employer and the representative of its employees to *** confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining"). Because petitioners are not conferred any rights or duties under the ULP provision at issue, they lack standing assert a violation of that duty.[2] Accordingly, ERB did not err in dismissing petitioners' complaint.

Affirmed.

---

[2] We further reject petitioners' contention that "ERB precedents establish that an illegal strike may be addressed through both a petition and a ULP complaint." In support of that proposition, petitioners rely on *Oregon Trail School District No. 46 v. East Education Association East County Bargaining Council, OEA/NEA*, 21 PECBR 157 (2005), and *Sandy Union High School District UH2 and Sandy Elementary School District 46 v. East County Bargaining Council/SEA/SETA*, 17 PECBR 151 (1997). However, neither of those cases involve a ULP asserted by a third party. Rather, in those cases, the public employer petitioned ERB for a declaration that a union's strike was unlawful because the union's final offer included permissive subjects of bargaining, and also alleged a ULP on the basis that the inclusion of those subjects violated the duty to bargain in good faith. *Oregon Trail School District No. 46*, 21 PECBR at 167; *Sandy Union High School District UH2 and Sandy Elementary School District 46*, 17 PECBR at 164.